IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA NEFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CV-117-JWB |
| | ) |
| WESTCHESTER SURPLUS LINES | ) |
| INSURANCE COMPANY; and | ) |
| INFINITY FINANCIAL, LLC d/b/a | ) |
| B & J INSURANCE AGENCY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion to Remand (Doc. 13), contesting the jurisdictional basis for removal of this case to federal court. The motion is fully briefed and ready for review. (Docs. 13, 22 & 34.) For the reasons explained below, this motion is GRANTED.

**I.    BACKGROUND**

According to the allegations in the complaint, Plaintiff owned and operated Chuck's Bar and Grill, located in Eufaula, Oklahoma (the "Grill"). (Doc. 2-2, at ¶ 6.) Plaintiff carried a fire insurance policy for the Grill issued by Defendant Westchester Surplus Lines Insurance Company ("Westchester") in 2018 under policy number FSF14453830 004 (the "Policy"), which she obtained through her insurance agent, Defendant Infinity Financial, LLC ("Infinity"). (Doc.2-2, at ¶¶ 7, 13.) On August 26, 2021, Plaintiff closed the Grill for the night and went home. (Doc. 2-2, at ¶ 8.) The next day, August 27, 2021, Plaintiff returned to the Grill to find there was a fire inside. (Doc. #2-2, at ¶ 9.) Plaintiff called 911; however, the Grill sustained a substantial amount of fire damage before the fire department was able to put out the fire. (Doc. #2-2, at ¶¶ 9, 10.) The fire caused tens of thousands of dollars in damage. (Doc. 2-2, at ¶ 10.) On August 28, 2021, Plaintiff notified her insurer, Westchester, of the fire. (Doc. #2-2, at ¶ 11.) Westchester opened a

claim under Claim No. KY21K279463 (the "Claim").  (Doc. 2-2, at ¶ 11.)  On October 26, 2021, Westchester sent a letter to Plaintiff, informing her that it was denying her claim because Plaintiff was not in compliance with the Policy provision that requires Plaintiff "to maintain the protective devices," which the Policy identifies as "smoke detectors." (Doc. 2-2, at ¶ 12.)

Infinity is an insurance brokerage capable of placing insurance with numerous carriers, including Westchester.  Plaintiff sought Infinity's expertise to procure the proper insurance for the Grill, "a smoking bar that had to have a fire suppression system rather than smoke detectors, because smoke detectors would go off constantly." (Doc. 13 at 3.)  Plaintiff alleges this fact was known to Infinity, and Infinity chose Westchester as her insurer.  Plaintiff contends Infinity should have sought and placed a policy that expressly covered her Grill in order to avoid this litigation.

Further, Plaintiff argues Westchester's denial of her claim was unreasonable because prior to the fire, Westchester confirmed that Plaintiff's business was compliant with the Policy.  Plaintiff bases this assertion on the fact that when Westchester first began insuring Plaintiff's business in 2018, it inspected the Grill and gave Plaintiff a Punch List with various repairs and upgrades that it said Plaintiff needed to perform in order to comply with the Policy.  (Doc. 2-2, at ¶ 13.)  The Punch List did not contain anything about a smoke detector.  (Doc. 2-2, at ¶ 13.)  Plaintiff performed the upgrades, transmitted the information to Infinity, and was not told of anything else that needed to be done.

After Westchester inspected Plaintiff's business in 2018, Westchester continued to provide coverage under the same Policy without any interruption for approximately three years until the Claim in 2021.  Plaintiff contends it wasn't until she made the Claim that Westchester stated its position for the first time that she did not comply with the Policy's "smoke detector" requirement.

(Doc. 2-2, at ¶ 14.)  Plaintiff contends (as an alternative theory) that she satisfied the policy provision with a fire suppression system that meets or exceeds industry standards.  Finally, Plaintiff argues the term "smoke detectors" is not defined by the Policy and is a term that is reasonably susceptible to multiple meanings.  Thus, it is an ambiguous term.

Plaintiff brought suit in state court to recover damages from Westchester.  (Doc. 2-2.) Plaintiff alleged breach of contract and breach of an insurer's duty of good faith and fair dealing after Westchester denied her loss claim under the Policy.  Defendant removed the case to federal court based on diversity jurisdiction.  28 U. U.S.C. § 1332(a)(1).  Plaintiff filed the instant motion to remand contesting the jurisdictional basis for removal.  This motion is governed by 28 U.S.C. § 1447(c), which mandates the remand of a removed case whenever "it appears that the district court lacks subject matter jurisdiction."  Plaintiff challenges allegations of fraudulent joinder made in the Notice of Removal to establish the existence of diversity jurisdiction.

With regard to the narrow issue before the court, Plaintiff, who is a citizen of the State of Oklahoma, also sued Infinity, an Oklahoma limited liability company whose member is a citizen of the State of Oklahoma.  (Petition at ¶ 3; Infinity's Answer at ¶ 3) (Docs. 2-2 and 2-11.)  Absent the application of fraudulent joinder principles, this would destroy diversity jurisdiction due to the lack of complete diversity between Plaintiff and all Defendants.

II.     LEGAL STANDARD

A removing defendant may prove fraudulent joinder in two ways.  The defendant may establish either (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013).  Westchester relies upon the second method. It does not assert,

whether explicitly or implicitly, that Plaintiff or her counsel has engaged in actual fraud. *See Ervin v. Minn. Life Ins. Co.*, 2000 WL 2521510, at *2 (E.D. Okla. May 18, 2020) ("Fraudulent joinder is a term of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant.").

With regard to establishing the second method, the Tenth Circuit has held:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indemnity*, 2000 WL 525992, at *1 (10th Cir. April 14, 2000).

### III.   ANALYSIS

Plaintiff asserts she is able to establish a cause of action against the non-diverse party, Infinity, because pursuant to Oklahoma law, an insurance agent must "offer coverage mandated by law and coverage for needs that are disclosed by the insureds." *Hernandez v. Liberty Ins. Corp.*, 73 F.Supp.3d 1332, 1338 (W.D. Okla. 2014) (citing *Rotan v. Farmers Ins. Group of Cos.*, 83 P.3d 894, 895 (Okla. Civ. App. 2023)). As Plaintiff sets forth in the petition, Infinity "knew, or should have known, [that] Plaintiff did not qualify for the Policy for the reason Defendant ultimately denied coverage, as this information was available before Defendant Infinity procured the Policy." (Doc. 2-2, at ¶ 17(d).)

More specifically, Plaintiff disclosed her need for coverage for the Grill—a bar and grill that allowed smoking and had an indoor charcoal grill. Plaintiff contends Infinity should not have recommended the subject policy knowing that it would not provide coverage. Infinity had a duty

to Plaintiff based on specialized knowledge about the terms and conditions of the Policy, including the exclusion of coverage for smoking bars that lack "smoke detectors," and because Infinity represented that it could procure the type of coverage sought by Plaintiff, "there is a possibility of liability for" negligent procurement.  (*Id.*)  Infinity's attempt to procure a policy that required a "smoke detector" fell outside the gambit of the type of policy Plaintiff needed.  Because the claims against Infinity do not fail as a matter of law, the elements of fraudulent joinder have not been satisfied by the facts alleged, and the court finds an Oklahoma court would not dismiss the cause of action against Infinity with complete certainty.  Therefore, Plaintiff meets the "possibility of recovery" standard for her negligent procurement claim to defeat fraudulent joinder.

Westchester has not shown there is no possibility Plaintiff would be able to establish a cause of action against the non-diverse defendants in state court.  *See Coppedge v. Cabor Norit Americas, Inc.*, 2020 WL 967339, at * 2 (N.D. Okla. February 27, 2020).  Whether the discovery process establishes such facts is not for this court to determine.

## IV.   CONCLUSION

Accordingly, Plaintiff's Motion to Remand (Doc. 13) is GRANTED.  This case is remanded to the District Court of McIntosh County, Oklahoma.

IT IS SO ORDERED.  Dated this 14th day of September 2023.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE